### BURDELL ET AL. *v.* DENIG ET AL.

1. In cases where profits are the proper measure of damages for the infringement of a patent, such profits as the infringer has made, or ought to have made, govern, and not those which the *plaintiff* can show that *he* might have made.
2. The above rule applies peculiarly and mainly to cases in equity, and is based upon the idea that as to such profits the infringer of the patent should be treated as a trustee for the owner thereof. On the other hand, in actions at law, it has been repeatedly held that the rate at which sales of licenses of machines were made, or the established royalty, constitutes the primary and true criterion of damages.
3. In the absence of satisfactory evidence of that class which is more appropriate in the forum where the case is pending, the other class may be resorted to, as furnishing one of the elements on which the damages, or the compensation, may be ascertained.
4. A certain instrument (*infra*, p. 717), held not to be a mere power of attorney, revocable at the pleasure of the maker, but a contract under which rights for a specified time were acquired.
5. As a receipt for the use of four of plaintiffs' machines, executed after the institution of the suit, was a valid acquittance of any claim for such use, it, was properly admitted in evidence, under the general issue, to reduce the amount of damages.
6. Where the evidence merely tended to prove certain disputed facts in issue, it

was error for the court to assume in its charge that they had been proved, and thus withdraw from the jury the right to weigh the evidence bearing upon such facts.

ERROR to the Circuit Court of the United States for the Southern District of Ohio.

*Mr. William Lawrence* for the plaintiffs in error.

*Mr. George Gifford, contra.*

The facts are stated in the opinion of the court. The paper therein referred to as having been introduced by the defendants is as follows: —

"Article of agreement made and entered into, this thirteenth day of March, 1860, between Sarah Burdell, of the county of Franklin, in the State of Ohio, and H. Crary, of the same county, witnesseth: —

"That said Sarah Burdell does hereby authorize and empower the said Crary, for the full term of four years and eight months, or from the date hereof until the twelfth day of November, 1864, as fully and completely as she might herself, had not this agreement been entered into, to sell and use, and grant to others the right to use, in the said county of Franklin, A. B. Wilson's sewing-machines, as known and denominated for sewing cloth and other fabrics, patented Nov. 12, 1850, and reissued Jan. 22 and Dec. 9, 1856, and also, the sewing-machine patented by J. M. Singer, together with all the improvements which have been made already, or shall hereafter be made in the same, without additional costs, and also all other sewing-machines of every name and description to which the said Sarah may have power to exercise any control whatever; and the said Sarah hereby covenants and agrees with the said Crary, that during the said term of four years and eight months she will not sell or use, or grant to others the right to sell or use, in the said county of Franklin, the sewing-machines above specified, or any other of any name or kind or description, without the consent of said Crary.

"2. That the said Crary agrees to make out and deliver to the said Sarah Burdell, or her authorized agent or attorney, on the first day of each and every month, a full and accurate report of all sales of sewing-machines of every name, kind, and quality made by him or his agents during the preceding month, stating the first cost of each such machine in the. purchase of the same from the manufacturers or their agents until ready for shipping, exclusive of freight and other incidental charges; also, the price at which such

machine was sold by said Crary or his agents; and stating, also, the difference between the said first cost of the said machines and the price at which the same were sold, and which difference for the preceding month, on the first day of each month when the said report is delivered, as aforesaid, the said Crary agrees to pay the said Sarah Burdell, or her authorized agent or attorney, thirty-five per centum during the first six months from the date hereof, and forty per centum thereafter, or until the 12th of November, 1864: *Provided, however,* if the said percentage for any one month during the first four months from the date hereof should not amount to the sum of seventy-five dollars, the said Crary agrees to make it up to the full sum of seventy-five dollars, and the said Sarah agrees that for any such deficiency or difference between the said percentage and the sum of seventy-five dollars the said Crary may reimburse himself out of the first excess of said percentage over one hundred dollars after the expiration of the said four months from the date hereof.

" 3. It is agreed by the said Sarah Burdell and the said Crary that in the prosecution of an injunction to restrain or prevent the sale or use of any sewing-machine in said county of Franklin, in violation of the right, power, and authority hereby vested in the said Crary to sell or use such machine in said county, and in the prosecution of any suit at law for the recovery of damages for the sale hereafter, or for the use of any such sewing-machine hereafter sold, the costs and expense of any such suit at law or in equity shall be equally borne by the said Sarah and the said Crary, each paying one-half of such costs and expenses, and each sharing equally, that is, each being entitled to one-half of the net amount received in any such proceedings, at law or in equity: *Provided,* that no such injunction shall be applied for, or any such suit at law instituted, without the consent of both parties to this agreement: *Provided also,* that for the purpose of prosecuting any such suit at law that may be agreed upon by the parties hereto, the power and authority herein vested in the said Crary shall remain and continue in full force and effect after the expiration of said term of four years and eight months: *Provided also,* that in any suits or proceedings at law or in equity which the said Sarah may see fit to institute on account of the use hereafter of any sewing-machines hereafter sold, the said Crary shall not be required to defray any portion of the costs and expenses, or be entitled to any share of the amount so recovered in any suit or proceedings so instituted, as last aforesaid, by said Sarah.

" 4. It is agreed that the first report of sales herein provided for shall be made on the first day of May next, and shall include all sales of sewing-machines from this date until the said first day of May.

" Witness our hands and seals this thirteenth day of March, 1860.

(Signed)    " SARAH BURDELL. [SEAL.]

" H. CRARY.    [SEAL.]

" In presence of :

" FRANKLIN GALE."

MR. JUSTICE MILLER delivered the opinion of the court.

The plaintiffs in error were plaintiffs in the Circuit Court in an action for an infringement of the patent of A. B. Wilson, for a feeding device in sewing-machines. They recovered a judgment for one hundred and twenty-five dollars, but insist that they were entitled to a much larger judgment, of which they were deprived by the rulings of the court in the progress of the trial.

The objections to these rulings will be considered by us under three heads, to which all the assignments of error relate.

1. As to the measure of damages.

Evidence was given tending to prove that plaintiffs had advertised to sell their machines, and had actually sold a shop-right to use one of them for twelve dollars and fifty cents, and had given a verbal license to another person to use an old machine in his house for five dollars, but afterwards refused to sell or license for Franklin County, and told defendants they desired to retain the use of the machine as a close monopoly. Evidence had also been given as to profits made by defendants. On this testimony they asked the court to instruct the jury that " this testimony was not sufficient to change the rule of damages from the profits which plaintiffs would have made if they had not been embarrassed by the interference of the defendants, to a mere license-price, because they do not establish a customary charge for the right to use the invention in Franklin County," which the court refused.

There are two sufficient objections to this prayer : —

*First,* In cases where profits are the proper measure, it is the profits which the *infringer* makes, or ought to make, which

govern, and not the profits which *plaintiff* can show that *he* might have made.

*Second*, Profits are not the primary or true criterion of damages for infringement in an action at law. That rule applies eminently and mainly to cases in equity, and is based upon the idea that the infringer shall be converted into a trustee, as to those profits, for the owner of the patent which he infringes, — a principle which it is very difficult to apply in a trial before a jury, but quite appropriate on a reference to a master, who can examine defendant's books and papers, and examine him on oath, as well as all his clerks and employés.

On the other hand, we have repeatedly held that sales of licenses of machines, or of a royalty established, constitute the primary and true criterion of damages in the action at law.

No doubt, in the absence of satisfactory evidence of either class in the forum to which it is most appropriate, the other may be resorted to as one of the elements on which the damages or the compensation may be ascertained; but it cannot be admitted, as the prayer which was refused implies, that in an action at law the profits which the other party might have made is the primary or controlling measure of damages. *Packet Company* v. *Sickles*, 19 Wall. 617.

2. A paper was introduced in evidence by defendants, signed Sarah Burdell, authorizing H. Crary, for the full term of four years, to sell, use, and grant to others the right to use, in said county of Franklin, A. B. Wilson's sewing-machines. It was agreed that the paper should have the same effect as if signed by William Burdell and the other plaintiffs in whom the title was when it was executed. It is too long a paper to insert here, but will be given *verbatim* by the reporter;[1] and its true construction is the foundation of the alleged error of the court in admitting it, and also in admitting a receipt given to the defendants by said Crary for the use of four of the machines for which they were sued.

It is claimed that the instrument is but a power of attorney revocable at the pleasure of the maker, and that it was so revoked before the receipt given in evidence was executed by Crary.

But we are of a different opinion. We think the instru-

[1] See the paper, *supra*, p. 717.

ment is a contract. That Crary acquired rights under it for four years, which, whether he may have so acted or not as to enable plaintiffs to have it rescinded or set aside in a suit in chancery, could not be revoked at their mere volition; and that these rights were such that his receipt for the use of the four machines mentioned in it was a valid acquittance of any claim for the same thing by plaintiffs in this suit.

It is said that the court erred in admitting the receipt in bar of the action, because it was executed after the suit was brought, and could not be so used without a special plea setting it up.

The fallacy of this argument consists in assuming that it was introduced as a bar to the action. It was only used to reduce the amount of the recovery, and not as a complete bar; and as it excluded from the computation of damages only four machines out of a larger number, it was admissible under the general issue, or any other form of plea which left the amount of the recovery in dispute.

We see no error in this branch of the case.

3. The defendants introduced also the following paper, and gave evidence of an assignment by Lowe to Singer & Co., and of a license from Singer & Co. to defendants: —

"In consideration of the sum of eighty dollars, to me paid by J. Payne Lowe, the receipt whereof is acknowledged, I do hereby assign, transfer, and set over unto the said Lowe, his representatives and assigns, the exclusive right to use, and sell to others to be used, in the county of Franklin, in the State of Ohio, Singer's patent sewing-machines, as mentioned in the patent granted to Isaac M. Singer, dated Aug. 12, 1851, together with the right to have the said machines delivered to be used, or sold to be used, in the said county of Franklin, in the State of Ohio.

"And I hereby covenant that I have good right to make the assignment aforesaid.

"In witness whereof I have hereunto set my hand and seal, this fourth day of February, A.D. 1857.

"WM. BURDELL.   [SEAL.]"

Evidence was also given tending to show that the machines called Singer machines, used by the defendants, were made as Singer machines had always been made.

And after all the testimony was closed, the plaintiff asked

the court to instruct the jury that the license of Burdell to J. Payne Lowe, of the 4th of February, 1857, did not authorize him, and those deriving rights under that license, to use, in the machine known and called Singer machine, in said county of Franklin, the feeding device patented to A. B. Wilson, which the court refused to give; but did charge the jury that the said license authorized the said Lowe, and all claiming title from him, to use in Franklin County the Singer machine, with a feeding device operating upon the principle and plan of that patented to Wilson : to which refusal of the court to charge as asked, and to the said charge as given, the plaintiffs then and there excepted.

In defence of this ruling, it is said that Burdell never had any interest in the Singer patent; that the instrument called the Singer machine, which was in use when Burdell made the above assignment to Lowe, was a Singer machine with the Wilson feeding device; and that, as Burdell did own the patent for this device, what he intended to assign was the right to use the Singer machine *with that* device. It is certainly true, that, in construing a written instrument, it is necessary and admissible to look to all the surrounding circumstances of the transaction which are necessary to discover its meaning. And it may be admitted, that, if the facts above stated were conceded to be true, it would follow that the reasonable construction of the contract would be such as the court held it to be. The refusal of the court to give the instruction asked by counsel for plaintiffs was, therefore, justifiable.

But these facts were not conceded by plaintiffs. Nor does the bill of exceptions say that they were proved. It says nothing at all about Burdell's interest or want of interest in the Singer patent; and in regard to use of the Wilson feeding device in the Singer machine, it says no more than that there was evidence *tending* to prove that it had always been so used in all these machines.

If these things were not proved, then there was no ground for the construction of the contract given by the court; and whether they were proved or not, was a matter for the jury and not for the court to decide. The jury may not have believed the witnesses; or, if believed, may not have found that their

testimony established what the bill of exceptions declares it tended to prove.   The court, therefore, in telling the jury peremptorily, on this testimony, that the license to Lowe did authorize him to use the Singer machine with a feeding device operating upon the principle and plan of that patented by Wilson, took away from the jury the right to weigh that testimony.   If the judge had said, that, *if they believed these facts to be established,* then the license to Lowe authorized the use of the Wilson device in the Singer machine, we would affirm the judgment; but because he, in this respect, assumed a function which belonged to the jury, and for that reason alone, the

<em>Judgment must be reversed and a new trial awarded.</em>